UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE I,<br>JOHN DOE,<br>JANE DOE II,<br><br>    Plaintiffs,<br><br>    v.<br><br>INDIANA UNIVERSITY BLOOMINGTON,<br>THE TRUSTEES OF INDIANA UNIVERSITY,<br>ANONYMOUS HOSPITAL,<br>CONNOR DELP,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:24-cv-01982-MPB-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs Jane Doe I, John Doe, and Jane Doe II filed this lawsuit against Defendants Indiana University Bloomington, the Trustees of Indiana University, Anonymous Hospital, and Connor Delp. (Docket No. 69, Second Amended Complaint ("SAC")). Plaintiffs' claims stem from Delp's acts of sexual misconduct against Jane Doe I while both were students at Indiana University Bloomington. Now before the Court are Defendants' respective Motions to Dismiss, (Docket Nos. 77; 84). For the reasons that follow, IU's Motion to Dismiss, (Docket No. 77), is **GRANTED** and Anonymous Hospital's Motion to Dismiss, (Docket No. 84), is **DENIED**.

## I.   Background

The following allegations are taken as true. On October 31, 2021, Defendant Connor Delp sexually assaulted and battered a female student at Indiana University's ("IU") Phi Kappa Psi fraternity house ("2021 Incident"). (SAC at ECF p. 5). At that time, Delp was a freshman at IU and a member of the IU football team. (*Id.*). IU received notice of the sexual misconduct via a

report made to the IU Police Department ("IUPD"). (*Id*.). Thereafter, Delp was "withheld from all football team activities" for a period but was granted redshirt status. (*Id*.).

IU initiated an investigation into the sexual assault allegations against Delp. (*Id*.). According to Plaintiffs, this investigation failed to comply with Title IX, 20 U.S.C. § 1681, *et seq.* (*Id*.). IU's shortcomings included not requiring "an objective evaluation of all relevant evidence," failing to "perform an adequate investigation" into the allegations, failing to conduct a proper hearing, failing to apply the appropriate standard of evidence in reaching a conclusion, permitting bias to impact the investigation's outcome, and failing to implement remedies to guard against future sexual misconduct. (*Id*. at ECF p. 6). As a result, Delp was allowed to remain enrolled at IU and participate on the football team. (*Id*.).

Plaintiff Jane Doe I ("Doe") was a student at IU during the fall semester of 2022. (*Id*.). On November 11, 2022, Doe and her friend visited Delp's residence to play video games. (*Id*.). At some point, Doe put on headphones to play a game while Delp and her friend were behind her. (*Id*.). Sometime later, Doe realized that her friend had fallen asleep. (*Id*. at ECF p. 7). Doe then "leaned back on the bed to look at her phone" when suddenly, Delp forcibly sexually assaulted her, including forced vaginal intercourse, while her "head was suctioned against the wall, which prevented her from saying anything." (*Id.*). Doe "continue to shake her head 'NO' and to verbalize 'NO' as clearly as she could while she cried." (*Id*.). Doe's friend woke up to the sound of Doe hyperventilating. (*Id*.). The friend then shouted, which "caused Delp to stop the sexual act." (*Id*.). Doe and her friend quickly gathered their clothing and left Delp's residence. (*Id*.). Thereafter, Doe learned that her friend had been sexually assaulted by Delp before she fell asleep. (*Id*.).

The next day, Doe turned to IU's resources for support. (*Id*. at ECF p. 8). However, November 12 was a Saturday and IU's Student Health Center was closed. (*Id*.). IU's website provides information for students seeking medical help after experiencing sexual assault. (*Id*.). The website lists a hospital emergency department which it states is open twenty-four hours a day with "specially trained nurses, called Sexual Assault Nurse Examiners, available to make sure [students] get the right care and collect evidence for a sexual assault kit to help with any police investigation." (*Id*. at ECF pp. 8–9).

Doe went to Defendant Anonymous Hospital's emergency department to receive medical care and receive a Sexual Assault Nurse Examination ("SANE"). (*Id*. at ECF p. 8). When Doe arrived at 1:27 p.m., she was informed that there was not a SANE nurse available, and that she should return during the nightshift to receive an exam. (*Id*. at ECF p. 9). Doe declined and opted to wait until a SANE nurse arrived. (*Id*.). At 7:47 p.m., Doe was informed that a SANE nurse was not available and that she should return two days later for an exam. (*Id*.). Anonymous Hospital did not report Delp's sexual misconduct against Doe to IU, IUPD, state police, or local police. (*Id*.). Doe "was not made aware of the standards for timeliness of sexual assault examination and was not provided with any instructions as to what she should or should not do related to forensic evidence collection." (*Id*.).

Doe reported Delp's sexual misconduct to IUPD on November 14, 2022. (*Id*.). Thereafter, the Bloomington Police Department investigated Delp's sexual misconduct and charged Delp with multiple felonies, including but not limited to rape when victim has verbally or otherwise refused, rape when compelled by force or imminent threat of force, and sexual battery. *See State of Indiana v. Connor James Delp*, 53C02-2305-F3-000399 (Monroe Cir. Ct. May 8, 2023).

On November 11, 2024, Doe, as well as Plaintiffs John Doe, and Jane Doe II, the biological parents of Doe, filed this lawsuit against Defendants IU Bloomington and the Trustees of Indiana University, (collectively "IU"), Anonymous Hospital, and Delp. (Docket No. 1). Plaintiffs' Second Amended Complaint ("SAC") raises the following claims: (1) deliberate indifference in violation of Title IX, (2) post-assault deliberate indifference in violation of Title IX, (3) negligence, (4) negligence per se, (5) battery, and (6) assault. (SAC at ECF pp. 11–18). IU and Anonymous Hospital have each moved to dismiss all of Plaintiffs' claims against them, (Docket Nos. 77; 84).

## II.    Legal Standard

Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi*., 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)).

Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, a plaintiff need not include "detailed factual allegations," rather, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss for failure to state a claim, courts "take all of the factual allegations in the complaint as true," *id*. at 678, and

draw all reasonable inferences in the plaintiff's favor. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016).

## III.    Discussion

### A.    Motion to Strike

In support of its Motion to Dismiss, (Docket No. 77), IU submitted an Outcome Letter, (Docket No. 78), pertaining to the 2021 Incident. The Outcome Letter states that the "hearing panel [] determined by the preponderance of the evidence that there [was] no finding [that Delp] [] violat[ed] . . . the *Code of Student Rights, Responsibilities, and Conduct*." (*Id*. at ECF p. 3) (emphases in original). In their response brief, Plaintiffs argue that the Outcome Letter is neither referenced in their SAC, nor central to their claims, and thus, should be struck. Plaintiffs are correct.

When evaluating the sufficiency of a complaint's factual allegations, courts may consider "documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to h[er] claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Bible v. United Student Aid Funds, Inc.,* 799 F.3d 633, 639–40 (7th Cir. 2015) ("In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents, without converting the motion into one for summary judgment."). Plaintiffs' SAC includes allegations regarding the 2021 Incident, but never references the Outcome Letter. As to its centrality, the Outcome Letter is, as Plaintiffs highlight, "only one piece of the puzzle." (Docket No. 88 at ECF p. 10). While the Outcome Letter is no doubt relevant to Plaintiffs' claims, relevancy is not the standard—centrality is. Here, the SAC centers on IU's *handling* of the 2021 Incident. As the Court will later explain in greater depth, Plaintiffs are not suing based on IU's *decision* regarding the 2021 Incident, rather, they are highlighting

IU's *handling* of the 2021 Incident to substantiate their theory of deliberate indifference. Thus, the Court need not consult the Outcome Letter to assess the SAC's plausibility. Because the Outcome Letter does not "lie[] at the heart" of Doe's claims, *Gillis v. Meisner*, 525 F. App'x 506, 509 (7th Cir. 2013), Plaintiffs' Motion to Strike, (Docket No. 88), is **GRANTED**.

    **B.**    **Motion to Dismiss**

        **1.**    **IU**

           **a)**    **Title IX: Pre-Assault Deliberate Indifference**

IU argues that Doe has failed to state a claim for pre-assault deliberate indifference stemming from the 2021 Incident. In support of its argument, IU contends that (1) Doe lacks standing to challenge IU's handling of the 2021 Incident, (2) Doe's allegations establish that IU had actual knowledge that sexual misconduct did not occur, and (3) Doe's allegations do not plausibly indicate that IU acted with deliberate indifference.

As to standing, IU asserts that Doe cannot recover based on IU's handling of a separate student's Title IX investigation. True, but Doe frames Count I as a pre-assault heightened risk "official policy" claim. (*See* Docket No. 88 at ECF p. 13) ("Jane Doe is not attempting to claim she is entitled to remedies under Title IX based upon the particulars of the 2021 allegation of sexual misconduct and IU's response to it alone.). While not yet adjudicated by the Seventh Circuit, pre-assault claims "derive[] from Supreme Court dicta, sister Circuit holdings, lower court holdings, and U.S. Department of Education guidance." *See Vander Pas v. Bd. of Regents of Univ. of Wis. Sys.*, No. 21-cv-1148, 2022 WL 1597423, at *5 (E.D. Wis. May 19, 2022). The Court assumes without deciding that such claims are cognizable under Title IX. *See also Doe A v. Plainfield Comm. Consol. Sch. Dist. 202*, No. 21 C 4460, 2023 WL 2428870, at *6 n.3 (N.D. Ill. Mar. 9, 2023) (quoting *Reed v. S. Ill. Univ.*, No. 3:18-cv-1968, 2020 WL 3077186, at *5 (S.D. Ill.

June 10, 2020)) ("While the issue has not been addressed in the Seventh Circuit, that alone is insufficient to lead this Court to rule definitively that such a claim does not exist or has been rejected or not recognized in this Circuit.").

Under both Sixth and Ninth Circuit precedent, an "official policy" claim is cognizable if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)); *Doe v. Metro. Gov't & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022).

The SAC does not clear the first hurdle. Deliberate indifference is a "high bar" that is met only if the school's response to harassment is "clearly unreasonable." *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014). Here, there are insufficient allegations from which the Court can infer that IU's response to the 2021 Incident was "clearly unreasonable." *Id*. To begin, Doe's "allegations" are largely conclusory. (*See* SAC at ECF p. 12) ("*IU maintained a policy of deliberate indifference* to reports, observations, and investigation findings of Delp's [2021] sexual assault . . . *IU's policy of deliberate indifference* created a heightened risk of sexual assault . . . to Jane Doe.") (emphases added); *cf. Yusuf v. Vassar Coll.*, 35 F.3d 709, 715–16 (2d. Cir. 1994) ("The allegations in support of the Title IX claim do more than merely recite the pleader's conclusion that the complained-of conduct was discriminatory. Instead, the complaint alleges events that, if proven, would support an inference of discrimination."). For example, Doe

alleges that IU "failed to implement its own policies and address the assault [in 2021 and 2022]" but fails to identify the policies it references or how IU failed to implement such policies. (SAC at ECF p. 10). Additionally, Doe alleges that IU failed to adequately investigate the 2021 Incident but does not flesh out, even generally, the parts of IU's investigation that were inadequate. (*Id.* at ECF p. 6).

When conclusory statements are separated from factual allegations, the Court is left with the following: Delp sexually assaulted a female student in 2021, IU had actual notice of this misconduct via a report to IUPD, IU later investigated Delp's misconduct, and Delp maintained his status as an IU student. (*Id.* at ECF pp. 5–6). But these allegations do not plausibly bring Doe's theory of deliberate indifference full circle. (*See id.* at ECF p. 12) ("IU maintained a policy of deliberate indifference to reports, observations, and investigation findings of Delp's sexual assault . . . perpetrated against a student in 2021."). For instance, Doe provides no facts as to the general content of the reports, when such reports were made, who made the reports, or who received the reports. *Cf. Vander Pas*, 2022 WL 1597423, at *6 (involving a pre-assault claim where the plaintiffs alleged the provost for the defendant-university observed harassment towards plaintiff, and that the executive director and associate director at the university were aware of harassment but did not report it). Similarly, Doe does not describe how IU ignored these reports or demonstrated deliberate indifference towards "observations" or "investigation findings" following the 2021 Incident. *See Doe A*, 2023 WL 2428870, at *7 (dismissing complaint because it was "missing facts [that] tend[ed] to show that the [defendant] ignored reports of sexual harassment" or that other students reported sexual assault and the defendant "maintained a policy of mishandling those reports"). Without the benefit of concrete facts, the Court is left only with a *legal conclusion*: IU's handling of the 2021 Incident violated Title IX.

Legal conclusions, however, are not accepted as true at the pleading stage. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (a court "need not accept as true legal conclusions, or threadbare recitals of elements of a cause of action, supported by mere conclusory statements") (citation modified).

Even if the SAC, for example, provided sufficient detail that reports of the 2021 Incident were ignored, or that the 2021 investigation was delayed, IU's handling of *one* incident of sexual misconduct falls short of establishing an "official policy." *Milestone v. City of Monroe, Wis*., 665 F.3d 774, 780 (7th Cir. 2011) (describing an official policy as a "*widespread*, though unwritten, custom or practice") (emphasis added). In concluding that a plaintiff had stated a pre-assault heightened risk claim, an Illinois district court highlighted that "the [defendant] [had] failed to adequately respond to complaints of sexual assault on at least *ten separate occasions*." *Kane v. Loyola Univ. of Chi.*, No. 22-cv-6476, 2024 WL 1157396, at *9 (N.D. Ill. Mar. 18, 2024) (emphases added). Similarly, a Wisconsin district court held that a plaintiff had stated a pre-assault claim considering "at least *four examples* of [defendant's] mishandling of sexual assault and/or harassment reports, or mandatory reporters failing to report, prior to [the plaintiff's] harassment and assault." *Vander Pas*, 2022 WL 1597423, at *6 (emphases added). In contrast, Doe alleges that on *one occasion* prior to her complaint, IU mishandled a Title IX claim. *See Bradford v. City of Chi*., No. 16 C 1663, 2017 WL 2080391, at *5 (N.D. Ill. May 15, 2017) (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)) (explaining that, to determine whether prior incidents establish a policy or practice at the pleading stage, "the court does not mechanically count the number of incidents, but instead looks for competent evidence tending to show a *general pattern of repeated behavior*") (emphases added) (citation modified). There is

simply no such pattern of mishandling sexual misconduct reports pled in the SAC. Thus, Doe fails to state an official policy claim under Title IX.

### b)  Title IX: Post-Assault Deliberate Indifference

Doe also raises a post-assault deliberate indifference claim against IU. To state a Title IX post-assault claim, a plaintiff must allege that the defendant: "(1) is a recipient of federal funding, and (2) acted with deliberate indifference (3) to known (4) acts of sexual harassment." *Albiez v. Kaminski*, No. 09-C-1127, 2011 WL 13157185, *7 (E.D. Wis. Dec. 28, 2011). A school is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Again, IU asserts that Doe has not alleged sufficient facts to state a claim for post-assault deliberate indifference. In response, Doe contends that she has "alleged specific failures by IU after Delp sexually assaulted her." (Docket No. 88 at ECF p. 16). Not quite. Again, many of Doe's "allegations" are legal conclusions. (SAC at ECF p. 9) ("IU's treatment of Jane Doe I and Delp in response to Jane Doe I's formal complaint constituted discrimination on the basis of sex . . . IU failed to comply with the requirements of 34 C.F.R. § 106.45 in addressing her formal complaint."). Setting aside the legal conclusions, the timeline of events is as follows: Delp sexually assaulted Doe in 2022, Doe consulted IU's webpage for resources, Doe chose to visit Anonymous Hospital to receive a SANE, Anonymous Hospital did not have a SANE nurse available, Doe was instructed to return in two days for an exam, and Delp was later charged with multiple felonies. (SAC at ECF pp. 7–9, 11).

A plausible complaint must state sufficient facts from which the Court can reasonably infer that IU has violated Title IX. Turning to the SAC, it at no point reveals *how* IU responded

to Doe's complaint. After detailing Doe's attempts to receive medical care, the SAC shifts to the criminal charges filed against Delp, entirely avoiding IU's investigation and handling of Doe's complaint in the process. (*See* SAC at ECF pp. 9–11). The allegations that do reference IU's investigation are no doubt conclusory, and thus unhelpful. (*Id.* at ECF p. 9) (IU's "response to Jane Doe I's formal complaint constituted discrimination on the basis of sex under Title IX"). Because IU's alleged failures to comply with Title IX and its implementing regulations are unsubstantiated by factual allegations, the SAC cannot withstand Rule 12(b)(6) scrutiny.

IU's Motion to Dismiss, (Docket No. 77), is **GRANTED** as to Doe's Title IX claims, Counts I and II. Doe will be given one last opportunity to amend her complaint. With respect to Doe's official policy claim, her apparent status as a non-student[1] at the time of the 2021 Incident could trigger statutory standing issues. *See Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 563 (D.R.I. 2017), *aff'd*, 896 F.3d 127 (1st Cir. 2018) ("Finding that Ms. Doe's status as a non-student, regardless of her allegations that the Court accepts as true, removes her from Title IX's private-cause-of-action umbrella of protection."); *see also E.C. v. Cmty. Sch. Corp. of E. Hancock Cnty.*, No. 1:19-cv-3563, 2023 WL 5872522, at *5–6 (S.D. Ind. Sept. 11, 2023) (holding that plaintiff's claims were "beyond the scope of Title IX" because he did not "participate—or attempt to participate—in any education program or activity offered by" the defendant-school). Plaintiffs should be mindful of this potential roadblock when amending their complaint and defending against future motions.

---

[1] The SAC does not reveal Doe's status at the time of the 2021 Incident. (*See* SAC at ECF p. 4). However, Plaintiffs seem to acknowledge that Doe was not an IU student in the fall of 2021. (*See* Docket No. 88 at ECF pp. 21–22).

### c)    Negligence and Negligence Per Se

Doe brings negligence and negligence per se claims. In their response brief, Plaintiffs concede dismissal of their negligence per se claim. (*See* Docket No. 88 at ECF p. 26 n.8). Thus, IU's Motion to Dismiss, (Docket No. 77), is **GRANTED** as to that claim.

Doe's negligence claim proves more convoluted. A plaintiff must establish three elements to recover on a claim for negligence: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach." *Holt v. Quality Motor Sales, Inc.*, 776 N.E.2d 361, 365 (Ind. Ct. App. 2002) (quoting *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). Similar to her Title IX claims, Doe's allegations as to IU's alleged negligence say little about IU's *conduct*. For example, Plaintiffs state their belief that IU "failed to exercise reasonable care in investigating the allegation of sexual assault" in 2021 and breached its duty to Doe by permitting Delp to continue his enrollment at IU. (SAC at ECF p. 15). Presumably, Plaintiffs have a factual basis for their belief that IU's conduct amounted to negligence. But Plaintiffs have not clued the Court into that basis, and without it, the Court cannot reasonably infer that IU failed to "conform its conduct to the requisite standard of care required by the relationship." *Holt*, 776 N.E.2d at 365 (citation modified); *see also McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations omitted). For this reason, Doe's negligence claim against IU is **DISMISSED**.

Additional issues remain. To begin, the parties dispute whether IU owed Doe a duty of care. In concluding that no duty existed, IU relies on the *Webb* factors. Generally, when confronted with the question of duty in Indiana, a court will balance three factors to guide its

analysis: (1) the relationship between the parties, (2) the reasonable foreseeability of the harm, and (3) public policy concerns. 575 N.E.2d at 995. However, when a duty has "already been declared," *Goodwin v. Yeakle's Sports Bar & Grill, Inc*., 62 N.E.3d 384, 387 (Ind. 2016), courts forgo applying *Webb*. This was the case in *Northern Indiana Public Service Company v. Sharp*, where the Indiana Supreme Court held that there was "no need to apply *Webb* to determine what duty a business owner owes to its invitee[,]" because the law "in this area [was] well settled[.]" 790 N.E.2d 462, 465 (Ind. 2003).

Doe takes a different approach. Instead of analyzing duty under *Webb*, she argues that IU's duty to her is established under § 43(c) of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm, which states the following:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to which a third person is exposed has a duty of reasonable care to the third person in conducting the undertaking if . . .
>
> (c) the person to whom the services are rendered, the third party, or another relies on the actor's exercising reasonable care in the undertaking.

Doe has not cited, nor can the Court identify, any Indiana court case discussing duty under the Restatement § 43(c) as it relates to universities, its students, and sexual misconduct. *See Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No. 1:23-cv-542, 2024 WL 3293591, at *14 (S.D. Ind. July 2, 2024), *judgment entered*, No. 1:23-cv-542, 2024 WL 4721692 (S.D. Ind. Oct. 4, 2024) (applying the *Webb* factors because "no other test has been declared or articulated" to determine whether the NCAA assumed a duty to protect student-athletes from sexual misconduct by coaches).

To support her reliance on § 43 of the Restatement, Doe turns to *Tyus v. Indianapolis Power & Light Company*. 134 N.E.3d 389 (Ind. Ct. App. 2019). There, the plaintiffs' vehicle was struck by another vehicle hours after the traffic signals at an intersection went out. *Id*. at 395. On appeal, the court considered whether a duty existed between the defendant, who supplied

equipment and electricity for traffic signals throughout the city of Indianapolis, and the plaintiffs. *Id*. at 396. In resolving this question, the court found that a duty arose from three sources of Indiana law: (1) a common law duty, (2) statutory duty, and (3) the Indiana Supreme Court's adoption of the Restatement of Torts. *Id*. at 403. As to the relationship between the defendant and public motorists, a common law duty had already been declared: "[p]ublic utilities that have received from public authorities franchises which provide for the accommodation of the general public in return owe a duty to the public . . ." *Id*. (quoting *S.E. Ind. Nat. Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993)). This duty was "reinforced by Indiana's statutes and the [Indiana Utility Regulatory Commission's] regulations," as well as "*supported* by Section 43 of the Restatement (Third) of Torts[.]" *Id*. (emphasis added). Ultimately, the usefulness of the court's reasoning in *Tyus* is limited here. As highlighted by IU, Doe is proceeding under § 43(c), not (b), of the Restatement. Moreover, the parties' relationship is distinct from *Tyus*, where there was an established common law duty present.[2]

The lack of factual allegations also creates roadblocks to analyzing duty. Despite amending their complaint on two occasions, (*see* Docket Nos. 1; 48; 69), Plaintiffs' SAC omits facts relevant to analyzing the duty element under either *Webb* or the Restatement. For example, while the Plaintiffs' brief acknowledges that "Jane Doe I was an IU student during the Fall semester in 2022," the SAC does not reveal her status at the time of the 2021 Incident. (Docket

---

[2] Generally, there is no "duty. . . to control the conduct of a third person as to prevent him from causing physical harm to another" absent a special relationship between the defendant and the third person or the defendant and the plaintiff. *Buchanan ex rel. Buchanan v. Vowell*, 926 N.E.2d 515, 522 (Vaidik, J. concurring) (Ind. Ct. App. 2010) (quoting Restatement (Second) of Torts § 315 (1965)). That said, Doe does not appear to argue that IU had a duty to protect students like Doe from sexual assaults perpetuated by fellow students. Rather, Doe argues that pursuant to § 43(c), IU undertook a duty to exercise reasonable care in investigating the 2021 Incident, and that, had it exercised reasonable care during its investigation, it would have removed Delp from campus and thus eliminated an active threat to fellow students. (Docket No. 88 at ECF p. 17). The legal tenability of this theory should be addressed by the parties should IU renew its motion to dismiss.

No. 88 at ECF p. 4).[3] Whether Doe was a student is material to analyzing the relationship factor of the *Webb* test. So too is it relevant to § 43 of the Restatement, which provides that an actor must "know[] or should know that the undertaking reduces the risk of harm to *a class of persons* that includes the third-person victim." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 43 cmt. f (emphases added). Additional factual allegations will aid the Court in determining whether Doe was within a "class of persons" for which IU knew or should have known that its undertaking, the investigation into the 2021 Incident, would reduce the risk of harm.[4]

Zooming out from the element of duty, IU argues that Doe failed to state a claim under § 43(c) because she did not allege that she relied on IU to exercise reasonable care during its investigation into the 2021 Incident. Specifically, IU asserts that "[t]o show reliance, a plaintiff must allege knowledge of the undertaking." (Docket No. 97 at ECF p. 12). Because Doe was not a student at the time of the 2021 Incident, IU argues, she could not have relied on IU exercising reasonable care during its investigation. But this argument is hard to square with comment e to § 43 of the Restatement, which provides insight on this point: "The manner in which reliance is a cause of harm does not matter. Nor does it matter who relies on the undertaking being performed in a nonnegligent fashion." It is possible, then, that reliance could be satisfied via the person on whose behalf the undertaking is taken, which here would be the victim of Incident 2021. *See King v. Nat'l Spa & Pool Inst., Inc.*, 570 So. 2d 612, 618 (Ala. 1990) (reliance by pool manufacturer, on whose behalf safety standards were promulgated, satisfied reliance requirement in suit by injured swimmer) (applying the Restatement (Second) of Torts § 324A). Like her Title

---

[3] Doe seems to acknowledge that she was not an IU student at the time of the 2021 Incident. (*See* Docket No. 88 at ECF pp. 21–22).

[4] While it is certainly worthwhile to know Doe's status at the time of the 2021 Incident, it is notable that comment f to § 43 of the Restatement states that "[t]he actor need not know who the third person is who is subject to risk."

IX claims, Doe will be given an opportunity to amend her negligence claim. The parties are encouraged to include additional briefing on this issue should IU renew its motion to dismiss.

### d)    Loss of Consortium

Because Doe's claims, as pleaded, cannot withstand Rule 12(b)(6), the Parent Plaintiffs' loss of consortium claim cannot proceed. *See Wine-Settergren v. Lamey*, 716 N.E.2d 381, 390 (Ind. 1999) ("Being derivative in nature, a spouse's loss of consortium claim cannot proceed when the injured spouse's negligence claim against the same party is barred.").

### 2.    Anonymous Hospital

Defendant Anonymous Hospital also moves to dismiss Plaintiffs' claims against it. (Docket No. 84). The day after initiating this action, Plaintiffs filed a Proposed Complaint against Anonymous Hospital with the Indiana Department of Insurance.[5] On April 8, 2025, this Court entered a Case Management Plan, (Docket No. 70), excepting Anonymous Hospital from deadlines pursuant to Indiana Code § 34-18-8-7. (*Id*. at ECF p. 3). The Court noted that "subsequent deadlines do not apply to Anonymous Hospital" and that "Anonymous Hospital shall not be required to submit any pleadings or tender any disclosures in this matter until a medical review panel has issued its opinion." (*Id*.).

Notwithstanding the safeguards imposed by the Court's Case Management Plan, Anonymous Hospital argues that Plaintiffs' negligence claims are subject to dismissal because the medical review panel has not yet issued its opinion. However, the Indiana Code expressly permits a party to file suit for malpractice at the same time their proposed complaint is considered by the medical review board so long as they do not pursue the malpractice claim. *See Cutchin v. Robertson*, 986 F.3d 1012, 1014 (7th Cir. 2021) (noting that Indiana law permits a

---

[5] The Court takes judicial notice of this fact.

plaintiff to file a medical malpractice claim in federal court as they file a proposed complaint with the Indiana Department of Insurance); *Cahill v. Davis*, 242 N.E.3d 1104, 1111 (Ind. Ct. App. 2024) (reiterating that since 1999, the MMA has "permitted parties to 'commence an action in court for malpractice at the same time the claimant's proposed complaint is being considered by a medical review panel'"). In compliance with Indiana Code 34-18-8-7, Anonymous Hospital is not required to submit any pleadings and will not be prejudiced by that fact. (Docket No. 70 at ECF pp. 3–4). Further, Plaintiffs' SAC preserves Anonymous Hospital's anonymity, as is required by Ind. Code 34-18-8-7(a)(1), and the case caption has been amended accordingly, (*see* Docket No. 103). For these reasons, Anonymous Hospital's Motion to Dismiss, (Docket No. 84), is **DENIED**.

## IV.    Conclusion

In sum, Defendant IU's Motion to Dismiss, (Docket No. 77), is **GRANTED** and Defendant Anonymous Hospital's Motion to Dismiss, (Docket No. 84) is **DENIED**. Plaintiffs will be given one final opportunity to amend their Complaint. **Plaintiffs have until August 23, 2025, to file a third amended complaint.**

**IT IS SO ORDERED.**

Dated:  July 24, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.