UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE I,<br>JOHN DOE,<br>JANE DOE II,<br><br>          Plaintiffs,<br><br>          v.<br><br>INDIANA UNIVERSITY BLOOMINGTON,<br>THE TRUSTEES OF INDIANA UNIVERSITY,<br>ANONYMOUS HOSPITAL,<br>CONNOR DELP,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:24-cv-01982-MPB-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON MOTION TO DISMISS**

Plaintiff Jane Doe I ("Doe") and Defendant Connor Delp were students at Indiana University Bloomington in 2022 when, according to Doe, Delp sexually assaulted her in his apartment. Doe, along with her mother, Jane Doe II, and father, John Doe, sued Indiana University Bloomington ("IU"), the Trustees of Indiana University, an Anonymous Hospital at which Doe says she sought treatment, and Delp, her alleged attacker. Plaintiffs allege that IU and the Trustees ("Defendants") violated Doe's right to be free from sex discrimination under Title IX, 20 U.S.C. § 1681, and that IU, the Trustees, the Hospital, and Delp committed negligent acts that harmed them. IU and the Trustees filed a Motion to Dismiss, (Docket No. 120), which is pending before the Court. For the following reasons, that Motion, (Docket No. 120), is **GRANTED in part**.

I. **Background**

The Court takes the following facts as true. In 2021, a female IU student accused Delp, a member of the IU football team, of sexually assaulting her at a fraternity Halloween party.

(Docket No. 113 at ECF p. 5). IU learned of this alleged assault from the IU Police Department, to whom it was reported. (*Id.*). IU withheld Delp from football team activities and investigated the report. (*Id.*). Throughout the investigation, Delp employed an attorney to conduct his or her own investigation. (*Id.* at ECF p. 6). Seven months later, in July 2022, IU convened a sexual misconduct hearing panel, which received evidence and testimony. (*Id.* at ECF pp. 6–7). During the hearing, Delp's attorney served as his hearing advisor. (*Id.* at ECF p. 6). IU's Discrimination, Harassment, and Sexual Misconduct Policy ("Policy")[1] permits the parties to be accompanied by an advisor throughout "all proceedings," (Docket No. 120-4 at ECF p. 10), and requires that the complainant and respondent (the accused) have an advisor during the hearing, (*id.* at ECF p. 18). If neither the complainant nor respondent has his or her own advisor, IU provides one. (*Id.*). The Policy permits one party to employ an attorney as his advisor even if the other party's advisor is not an attorney. (*Id.*). The misconduct hearing panel "determin[ed] that sexual misconduct did not occur." (Docket No. 113 at ECF p. 7).

In November 2022, Doe was a student at IU. (*Id.* at ECF pp. 8, 9, 13, 16). On November 11, Delp sexually assaulted Doe at Delp's apartment. (*Id.* at ECF p. 8). Doe left. (*Id.* at ECF p. 9). The next day, she sought help on an IU website, which informed her that Anonymous Hospital is open all day, every day to help victims of sexual assault, and that the Hospital employs sexual

---

[1] The Court has taken judicial notice of a version of IU's Discrimination, Harassment, and Sexual Misconduct Policy, (Docket No. 136 at ECF p. 3), which Defendants' say is the version of the Policy "applicable to both the 2021 and 2022" investigations, (Docket No. 124 at ECF p. 11 n.9; *see also* Docket No. 120-4). Plaintiffs seem to disagree. (Docket No. 133 at ECF p. 8). This dispute is inconsequential. The relevant portions of the Policy discussed below (VI.C2, VI.D.1, & VI.F.8) are identical in the version of Policy that Defendants submitted as an exhibit, (Docket No. 120-4) (also retrievable at https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/archived-11012021-04232024.html), the November 2021 archived version, https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/archived-08142020-11032021.html, and the current version, https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/index.html. The Court may take judicial notice of each version of IU's Policy. *Cesca v. W. Ill. Univ. Bd. of Trs.*, No. 4:23-cv-4043, 2024 WL 152812, at *1–2 & n.1 (C.D. Ill. Jan. 15, 2024); *Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *8 & n.12 (N.D. Ill. Oct. 11, 2022). Because there is no difference between the Policies that is relevant here, the Court will refer to Docket No. 120-4 as the "Policy" when discussing the 2021 and 2022 investigations.

assault nurse examiners who collect evidence to assist with police investigations. (*Id.* at ECF pp. 9–10). Doe went to the Hospital in the afternoon, but no sexual assault nurse examiner was there to treat her. (*Id.* at ECF p. 10). The Hospital told Doe to return for treatment about five and a half hours later, during the nightshift, but Doe opted to wait at the Hospital. (*Id.*). Almost an hour after the nightshift had started, the Hospital told Doe that no nurse was available, and that she should return two days later for her exam. (*Id.*). Doe reported Delp to IUPD. (*Id.* at ECF p. 11). IU investigated. (*Id.*). As he did in 2021, Delp employed an attorney to investigate and serve as his hearing advisor. (*Id.*). IU held a hearing. (*Id.*). Plaintiffs do not state the outcome of that hearing.

The Bloomington Police Department investigated Doe's accusation against Delp. (*Id.* at ECF p. 13). Delp was subsequently charged in state court with "multiple felonies," including rape and sexual battery. (*Id.*).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this pleading standard, a plaintiff need not include "detailed factual allegations," but rather must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545–47 (2007). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). At this stage, courts must "take all of the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all

reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

### III. Discussion

#### A. Title IX Claims

Title IX prohibits educational institutions that receive federal funding from discriminating against individuals on the basis of sex. 20 U.S.C. § 1681(a). The Supreme Court has held that peer-on-peer sexual harassment counts as sex discrimination for which an educational institution may be liable. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999). To prove a peer-on-peer claim, a plaintiff must show that the school was "deliberately indifferent" to a known, severe act of sexual harassment. *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911 (7th Cir. 2020) (citation omitted). Deliberate indifference is a "high bar" that requires a "clearly unreasonable" response on the school's part. *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014) (citation omitted). Whether Plaintiffs' allegations establish that IU's response was clearly unreasonable may be decided on a motion to dismiss. *Wilson v. Johnson*, No. 1:22-CV-336, 2023 WL 8018477, at *5 (N.D. Ind. Nov. 20, 2023) (citing *Davis*, 526 U.S. at 649).

Before the Court is Plaintiffs' Third Amended Complaint, yet portions of Plaintiffs' Title IX theories remain confusing. The Court has done its best to understand Plaintiffs theories. Doe derives two Title IX claims from the assault she allegedly suffered in 2022—one styled a pre-assault claim, the other a post-assault claim. (Docket No. 139 at ECF p. 8). The pre-assault claim reasons that IU knew Delp sexually harassed or assaulted a female student in 2021 but did not "adequate[ly] investigat[e]" Delp afterward, which allowed Delp to assault Doe in 2022. (Docket

No. 113 at ECF pp. 14–15).[2] Plaintiffs' post-assault claim seems likewise to allege that IU did not adequately investigate Delp after the 2022 alleged assault.

Even if everything Plaintiffs say is true, they have not pleaded facts that show IU's response to the 2021 and 2022 incidents was deliberately indifferent. By Plaintiffs' own telling, IU responded to the 2021 and 2022 complaints by launching an investigation, receiving evidence, and holding a hearing. (Docket No. 113 at ECF pp. 5–7, 11). This is the opposite of indifference—"[t]his is not a situation where the school learned of a problem and did nothing." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 809 (7th Cir. 2021) (citation modified). Without facts showing a clearly unreasonable response on IU's part, Plaintiffs have no Title IX claims. *See id.* at 808–09; *see also C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 543 (7th Cir. 2022) (en banc) ("The [school's] response does not have to be perfect or even successful.").

Plaintiffs indirectly concede that IU did not "do nothing," by characterizing IU's 2021 and 2022 investigations as "[in]adequate" and "not compliant" with IU's Policy. (Docket No. 113 at ECF pp. 6–7, 14). These concessions are puzzling when read alongside the bare allegations that IU "t[ook] no action," implemented no "protective measures," and "failed to implement any remedies" after the 2021 alleged assault, which Plaintiffs make elsewhere in their complaint and in their brief. (Docket Nos. 139 at ECF pp. 12–13; 113 at ECF p. 15).[3]

Plaintiffs characterize the 2021 and 2022 investigations as biased in Delp's favor. Their theory seems to be that IU did not follow its own Policy when it investigated Delp. (Docket No.

---

[2] Plaintiffs' Response to Defendants' Motion to Dismiss confirms that Plaintiffs have dropped their theory that IU had an "official policy" of deliberate indifference to claims of sexual harassment. (Docket No. 139 at ECF p. 8).
[3] Plaintiffs' response to Defendants' Motion to Dismiss cites Plaintiffs' Second Amended Complaint, (Docket No. 69), which the Court dismissed months ago, (Docket No. 104), as well as Defendants' accompanying brief in support, (Docket No. 79). Neither Docket No. 69 nor Docket No. 79 is operative here. Plaintiffs' Third Amended Complaint, (Docket No. 113), is the operative complaint, and Docket No. 124 is Defendants' operative brief in support of dismissal.

113 at ECF pp. 6–7 (¶¶ 28, 42), 11 (¶ 77), 12 (¶ 83)). The first reason Plaintiffs provide is that Delp employed an attorney as his advisor, but neither Delp's first accuser nor Doe had an attorney-advisor. This arrangement was contemplated by the Policy, however, and the Policy permitted it. (Docket No. 120-4 at ECF p. 18 (¶ D.1)). Nor did the Policy prohibit cross-examination of the complainant by the respondent's attorney-advisor, (*id.* at ECF pp. 18–19 (¶¶ D.1, F.8)), or Delp's attorney-advisor's parallel investigations, during which the attorney obtained witness statements and evidence and provided it to IU, (*id.* at ECF p. 17 (¶ C.2)). The Policy contradicts Plaintiffs' accusations of improper procedure, and the Policy controls. *Dufour v. Matrisch*, No. 18 CV 1269, 2018 WL 4073337, at *2 (N.D. Ill. Aug. 27, 2018); *Young v. Associated Bank Nat'l Ass'n*, 24 C 8911, 2025 WL 1282747, at *4 (N.D. Ill. May 3, 2025). The Court will not accept as true allegations that contradict the Policy.

Plaintiffs' post-assault claim is particularly threadbare. The claim itself is merely a series of legal conclusions. (Docket No. 113 at ECF pp. 16–17). As for the facts, Plaintiffs say Doe was sexually assaulted by Delp at his apartment, left, and sought resources on IU's website, which said that Anonymous Hospital was open all day, every day, to treat sexual-assault victims. (*Id.* at ECF pp. 9–10). Doe went to Anonymous Hospital to seek this treatment but could not get it. (*Id.* at ECF p. 10). A couple days later, Doe reported the assault to the IU Police Department. IU "investigat[ed]" the incident and held a "hearing." (*Id.* at ECF p. 11). It is unclear what happened to Delp after the 2022 hearing. Plaintiffs do not say. Regardless, IU's decision to investigate Delp and hold a hearing was not clearly unreasonable, to say the least.

Plaintiffs have failed to plead facts that show Defendants were deliberately indifferent to the 2021 or 2022 sexual assault complaints lodged against Delp. Defendants' Motion to Dismiss, (Docket No. 120), is therefore **GRANTED** as to the Title IX claims. Those claims are

**DISMISSED with prejudice**. Plaintiffs have "repeated[ly] fail[ed] to cure deficiencies" with their Title IX claims, *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008), and are therefore not entitled to another chance to amend.

    **B.**    **Negligence Claim**

Defendants' Motion to Dismiss, (Docket No. 120), as to Plaintiffs' negligence claim is addressed in an Order to Show Cause filed contemporaneously with this Order.

**IV.**    **Conclusion**

Defendants' Motion to Dismiss, (Docket No. 120), is **GRANTED in part** as to Plaintiffs' Title IX claims. The Court reserves ruling on Defendants' Motion to Dismiss, (Docket No. 120), as to Plaintiffs' negligence claim, given the Order to Show Cause filed contemporaneously with this Order.

    **IT IS SO ORDERED**.

Dated: February 13, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.